## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| RANDY J. THOMAS, | ) | Case No. 5:20-cv-2628 |
| | ) | |
| Petitioner, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge Darrell A. Clay |
| | ) | |
| HAROLD MAY, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

## OPINION AND ORDER

In 2014, Petitioner Randy J. Thomas was convicted of murder with a firearm specification at a jury trial in State court. He was sentenced to prison for 19 years to life with parole eligibility after 15 years. In his petition for a writ of habeas corpus, Petitioner contends that this conviction violates his constitutional rights under the Second, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 1, 4, and 10 of the Ohio Constitution.

The Magistrate Judge recommends that the Court deny Mr. Thomas's petition. Mr. Thomas objects. For the reasons stated below, the Court **OVERRULES** Petitioner's objections, **ADOPTS** the Magistrate Judge's report and recommendation, and **ISSUES** a certificate of appealability under 28 U.S.C. § 2253(c).

## FACTUAL AND PROCEDURAL BACKGROUND

On April 13, 2013, Mr. Thomas visited his grandmother's house in Akron, Ohio, where a man named Anthony Smith was selling drugs outside. Mr. Thomas asked

Smith to go down the street instead.  (ECF No. 9-1, PageID #282.)  Smith responded by challenging Mr. Thomas to a fist fight.  (*Id.*)  Mr. Thomas accepted the challenge and suggested that they travel one street away to hold their fight uninterrupted.  (*Id.*, PageID #294.)  The two men entered their respective cars and drove to the suggested location.  No one witnessed the altercation that subsequently occurred between them.  (*Id.*)  Mr. Thomas testified that he swung at Smith but missed.  (*Id.*, PageID #282.)  Then, Smith pulled out a gun.  Mr. Thomas knocked the gun out of Smith's hand and got control of it.  (*Id.*)  When Smith started toward him, Mr. Thomas shot Smith.  (*Id.*)

Phyllis Brown, a resident on the street where the men fought, testified that she heard three gunshots, looked out her window, and saw Mr. Thomas holding a handgun.  (*Id.*, PageID #294.)  She stated that Mr. Thomas was standing several feet from Smith, who was prostrate on the ground.  (*Id.*)  Brown then saw Mr. Thomas enter his car and drive away from the scene, leaving Smith behind.  (*Id.*)  Also, Brown testified that she saw Smith try to start his car unsuccessfully and enter a nearby house for first aid.  (*Id.*)  She went outside to assist Smith, who was bleeding heavily from gunshot wounds.  (*Id.*)  No firearm was located at the scene of the fight, and Smith died from his wounds a short time later.  (*Id.*)

### A.  Trial

On August 9, 2013, a grand jury returned an indictment charging Mr. Thomas with one count of aggravated murder with a firearm specification.  (ECF No. 9-1, PageID #150.)  He pled not guilty to the charge on August 28, 2013, asserting that he shot Mr. Smith in an act of self-defense.  (*Id.*, PageID #286 & #926.)

2

### A.1.    Pretrial Motions

Barely a month before trial, Mr. Thomas moved for the appropriation of funds for an investigator to support his defense.  (*Id.*, PageID #151–54.)  On November 6, 2013, the State trial court granted Mr. Thomas's motion and authorized defense counsel to retain an investigator, but the State trial court held the trial date for December 9, 2013, as scheduled.  (*Id.*, PageID #155.)

Mr. Thomas moved to suppress testimony from a purported expert on gangs and evidence discovered during a search of his brother's vehicle.  (*Id.*, PageID #161–66.)  After a suppression hearing on December 3, 2013 (continued to January 3, 2014), the State trial court ruled that the expert on gangs could testify at trial. (*Id.*, PageID #173.)  It denied Mr. Thomas's motion to suppress the evidence from the vehicle because Mr. Thomas lacked standing to challenge the search. (*Id.*, PageID #174–83.)  Additionally, Mr. Thomas filed a motion *in limine* to exclude eyewitness testimony from Phyllis Brown (*id.*, PageID #169–71), which the State trial court also denied (*id.*, PageID #184–86).

### A.2.    The Jury's Question

A jury trial commenced on January 29, 2014 and ran through February 3, 2014, when the jury retired to deliberate.  (*Id.*, PageID #203.)  During deliberations on February 4, 2014, the jury sent a note to the trial judge listing three questions.  The first two questions requested records or transcripts from the trial.  (*Id.*, PageID #201.) The third question asked about the jury instruction on self-defense:

> Under Self Defense, Part (A) states "he was not at fault in creating the situation that gave rise to the dispute [. . . ]".  We are having trouble analyzing the issue of "fault."  If he were say "10%" at fault for having

3

agreed to fist fight is he considered at fault as it pertains to the wording in this section?

(*Id.*)  In response to that question, the trial judge wrote back:

You must re-review and apply your collective understanding of the meaning of the terms used in the jury instructions.  The court cannot further define the meaning of those terms.

(*Id.*, PageID #202.)   The record contains no indication that the trial judge contemporaneously informed or consulted the parties about the jury's communication or the trial court's response.  Later that day, the jury returned a verdict of not guilty on the aggravated murder charge but found Mr. Thomas guilty of the lesser included offense of murder with a firearm specification.  (ECF No. 9-1, PageID #203.)

On February 5, 2014, the trial court sentenced Mr. Thomas to life in prison with parole eligibility after 15 years, 3 years of incarceration on the firearm specification, and to an additional 1-year sentence from another case, each to be served consecutively, for a total of 19 years to life imprisonment.  (ECF No. 9-1, PageID #204.)

### B.    Direct Appeal

On March 3, 2014, Mr. Thomas appealed his conviction and sentence and the denials of his motion to suppress and motion *in limine.*  (*Id.*, PageID #206)  He raised fourteen assignments of error in the appeal.  As relevant here, Mr. Thomas (1) argued that the State trial court violated his constitutional rights by answering the jury's question about the self-defense instruction outside of his presence, which also violated his right to a public trial; (2) challenged the sufficiency of the evidence; and (3) raised ineffective assistance of counsel—for failing to raise self-defense in the

opening statement and throughout the trial. (*Id.*, PageID #213–14.) Over a dissent, which would have reversed on the basis of the jury question and the instructions on self-defense even under plain error review, the State appellate court overruled each objection and affirmed Mr. Thomas's conviction. (*Id.*, PageID #282–310; *see also Thomas I*, 2015-Ohio-2935 (Ohio App. Ct.).)

Mr. Thomas appealed to the Ohio Supreme Court (ECF No. 9-1, PageID #311–27), which declined to exercise jurisdiction to hear the appeal (*id.,* PageID #328). Mr. Thomas filed a petition for a writ of certiorari to the United States Supreme Court, which also denied review. (*Id.,* PageID #329–30.)

### C.    Petition for Post-Conviction Relief

Under Section 2953.21 of the Ohio Revised Code, Mr. Thomas petitioned for post-conviction relief on November 10, 2014. (*Id.*, PageID #331–93.) As relevant here, he challenged his conviction based on (1) his absence from the courtroom for the jury's question and response, which also violated his right to a public trial; and (2) ineffective assistance of counsel in many respects. (*Id.*, PageID #331–93.) On February 3, 2015, the State trial court denied the petition. (*Id.*, PageID #413–18.)

On appeal, the State appellate court affirmed in part and reversed in part. (*Id.*, PageID #518–32; *see State v. Thomas*, 2016-Ohio-5507, ¶ 1 (Ohio Ct. App.) ("*Thomas II*").) Again, one judge dissented, in part. (ECF No. 9-1, PageID #530–32 (Carr, J., dissenting in part); *Thomas II*, 2016-Ohio-5507, ¶¶ 27–34 (Carr, J., dissenting in part).) The State appellate court ruled that the State trial court should have held a hearing on Mr. Thomas's claims of ineffective assistance of counsel. (ECF No. 9-1, PageID #526; *Thomas II*, 2016-Ohio-5507, ¶ 21.) Mr. Thomas sought review at the

Ohio Supreme Court, which declined to exercise jurisdiction (ECF No. 9-1, PageID #534–35, #566), as did the United States Supreme Court (*id.*, PageID #567–68).

On remand, the State trial court held an evidentiary hearing on May 9 and 10, 2018 (*id.*, PageID #569–613), then denied his petition on June 25, 2018 (*id.*, PageID #614–41).  Mr. Thomas appealed on the basis of ineffective assistance of counsel, specifically contending that counsel failed to investigate and present available evidence about his state of mind and to retain a mental health expert.  (*Id.*, PageID #642 & #673.)  On October 16, 2019, the State appellate court affirmed.  (*Id.*, PageID #793–802; *see also State v. Thomas*, 2019-Ohio-4247, at *4 (Ohio Ct. App. Oct. 16, 2019) ("*Thomas III*").)  Again, one judge dissented.  (*Id.*)  The Ohio Supreme Court declined to exercise jurisdiction (*id.*, PageID #843), and the United States Supreme Court denied certiorari on October 5, 2020 (*id.*, PageID #844–917).

### D. Habeas Petition

On November 23, 2020, Mr. Thomas filed a petition for a writ of habeas corpus. (ECF No. 1.)  His petition asserts fifteen grounds for relief, challenging the self-defense jury instruction as vague (ground one) and unlawfully placing the burden of proof on him (ground three); the State trial court's response to the jury's question outside his presence (ground two, ground four, ground five, ground twelve, and ground thirteen); the refusal of an instruction on a lesser included offense (ground six); jury misconduct (ground seven); ineffective assistance of counsel (ground eight, ground eleven, ground fourteen, and ground fifteen), sufficiency of the evidence (ground ten); and cumulative error (ground nine).  (ECF No. 1, PageID #24–47.)

The Magistrate Judge issued a report and recommendation that the Court dismiss grounds one, two, three, five, seven, and twelve as procedurally defaulted, dismiss grounds six and nine as not cognizable on habeas review, and dismiss grounds four, ten, eleven, thirteen, fourteen, and fifteen on the merits. (ECF No. 18.) Petitioner filed timely objections. (ECF No. 20.) Though Petitioner's objections are not numbered or organized under headings, the Court counts six objections to the Magistrate Judge's report and recommendation, which the Court groups as follows:

First, Petitioner objects by averring that the Magistrate Judge failed to examine or analyze his arguments that application of the Antiterrorism and Effective Death Penalty Act of 1996 violates the Thirteenth and Fourteenth Amendments and is otherwise unconstitutional. (ECF No. 20, PageID #2999.)

Second, Petitioner objects to the Magistrate Judge's recommendation that grounds two, five, and twelve are procedurally defaulted. (ECF No. 20, PageID #3018.) Also, he objects to the Magistrate Judge's finding that ground six is not cognizable on habeas review. (*Id.*, PageID #3017.)

Third, Petitioner objects to the Magistrate Judge's analysis and conclusions on ground four and ground thirteen, which address the right to be present at all stages of the proceedings. (*Id.*, PageID #3004.)

Fourth, Petitioner objects to the Magistrate Judge's analysis of his insufficient evidence claim (ground ten). (*Id.*, PageID #3004.) In this regard, Petitioner also objects to the finding that there was insufficient briefing on the issue. (*Id.*, PageID #3006.)

7

Fifth, Petitioner objects that the Magistrate Judge conducted an insufficient analysis of his ineffective assistance of counsel claims.  (*Id.*, PageID #3006–14.)

Respondent did not file a brief addressing any of these objections.

## STANDARD OF REVIEW

A district court judge may direct a Magistrate Judge to submit "proposed findings of fact and recommendations for the disposition, by a judge of the court," 28 U.S.C. § 636(b)(1)(B), of a petition for a writ of habeas corpus, which the Court does by Local Rule, *see* L.R. 72.2.  When reviewing a report and recommendation, if a party objects within the allotted time, the district court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which the objection is made."  28 U.S.C. § 636(b)(1)(C); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981).  Objections must be specific, not general, and should direct the Court's attention to a particular dispute.  *Howard v. Secretary of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).  "The filing of objections to a magistrate's report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute."  *Thomas v. Arn*, 474 U.S. 140, 147 (1985).

Upon review, the court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge." 28 U.S.C. § 636(b)(1)(C).  Importantly, the Court's job is not to conduct a free-wheeling examination of the entire report and recommendation, but only to address any specific objections that a party has advanced to some identified portion of it.

Accordingly, it is the Court's task in this matter to review the Magistrate Judge's report and recommendation de novo, based on the specific objections that Petitioner raises.

## ANALYSIS

Where a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States," he is entitled to a writ of habeas corpus.  28 U.S.C. §§ 2241(c)(3) & 2254(a).  The writ tests the fundamental fairness of State court proceedings resulting in the deprivation of an individual's liberty.  *See, e.g.*, *Brown v. Allen*, 344 U.S. 443, 463 (1953); *Powell v. Collins*, 332 F.3d 376, 388 (6th Cir. 2003) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)); *Skaggs v. Parker*, 235 F.3d 261, 266 (6th Cir. 2000).  28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"With the AEDPA, Congress limited the source of law for habeas relief to cases decided by the United States Supreme Court."  *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000).

A State court adjudication is "contrary to" Supreme Court precedent under Section 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached

by [the Supreme] Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at a different result. *Williams*, 529 U.S. at 405. "Avoiding these pitfalls does not require citation of [Supreme Court] cases—indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).

Under Section 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. *See Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Williams*, 529 U.S. at 410). A State court adjudication involves "an unreasonable application of" Supreme Court precedent under Section 2254(d)(1) in one of two ways: (1) if the State court identifies the correct governing legal rule from the Supreme Court's cases[,] but unreasonably applies it to the facts of the particular State prisoner's case; or (2) if the State court either unreasonably extends a legal principle from the Court's precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *See Williams*, 529 U.S. at 407.

Petitioner makes numerous objections to the report and recommendation. Most of his arguments, though styled as objections, reconstruct the underlying grounds for relief asserted in his original habeas petition. However, some are sufficiently specific to allow review.

## I. Constitutionality of the AEDPA

In his traverse, Petitioner argues for the first time that the AEDPA is unconstitutional. (ECF No. 13, PageID #2646–67.) Specifically, he contends that the

10

Act violates the Thirteenth and Fourteenth Amendments.  He takes issue with the Act's deference to State-court judgments and to the limitations on review in the federal courts.  Ordinarily, failing to raise an argument in his petition waives the argument.  Accordingly, the Magistrate Judge did not address these arguments and did so properly.

Although the argument is waived, the Court notes that Petitioner's counsel has unsuccessfully raised similar arguments for more than a decade.  *See, e.g., Betts v. Tibbals*, No. 1:11-cv-01107, 2014 WL 4794530, at *3 (N.D. Ohio Sept. 24, 2014) ("Moreover, Betts' current counsel has made this exact same argument before the Sixth Circuit in the past but to no avail.") (citing *Andera v. Tibbals*, No. 1:11-cv-2606, 2012 WL 4955290, at *1 (N.D. Ohio Oct. 17, 2012)).  A panel of the "Sixth Circuit has never concluded that the AEDPA is unconstitutional."  *Betts*, 2014 WL 4794530, at *3 (cleaned up).  Additionally, courts in this District have upheld the AEDPA as constitutional, finding "universal agreement" among the Circuits that deference to State courts as envisioned under the Act does not violate an individual's constitutional rights.  *Id.*

*Bowling v. Parker*, 882 F. Supp. 2d 891 (E.D. Ky. 2012), addresses most of the arguments Petitioner makes here.  There, the court reinforced the principle that "state courts are capable interpreters of federal constitutional law" and are, not unlike federal courts, "bound to 'guard and protect rights secured by the Constitution.'"  *Id*. at 895–96 (quoting *Ex parte Royall*, 117 U.S. 241, 251 (1886)).  Because lower federal courts derive their power from statutes, Congress can "expand

11

or contract lower federal courts' power to grant habeas relief to state prisoners." *Id*. at 896–97; *see also id*. at 898 ("But even if [Section] 2254(d)(1) did limit the sources of law a lower federal court could rely on, such a restriction would be constitutional."). Additionally, the limitation imposed by Congress is "logical" because State courts are not bound by the federal appellate courts, only the Supreme Court, which remains the final word on judicial interpretation of the Constitution. *Id*. at 898–99, 901.

Nor does the AEDPA violate the Suspension Clause because it "only modifies the conditions in which a federal court can grant relief;" it does not "withdraw jurisdiction." *Id*. at 902. Habeas relief is subject to a high bar because it is a last resort "against extreme malfunctions," rather than mere "error correction," which should have occurred on direct appeal. *Id*. Indeed, Mr. Thomas had ample opportunity to pursue his claimed errors in State court. In any event, even if the AEDPA were unconstitutional as applied to Mr. Thomas, the Court would consider the petition without application of the Act, which leaves untouched many of the common-law principles to which he objects.

Because Petitioner waived this argument, which has no merit in any event, at least as applied here, the Court applies the AEDPA to the grounds for relief presented in the petition.

## II. Procedural Default and Issues Not Cognizable in Habeas

As a general rule, a petitioner must demonstrate that he has "exhaust[ed] all available opportunities to pursue his claim in state court." *Gerth v. Warden, Allen Oakwood Corr. Inst.*, 938 F.3d 821, 826–27 (6th Cir. 2019). A federal court may not

consider a habeas petition unless a State prisoner has presented their claim to the State courts in accordance with their procedural rules. *See Shinn v. Ramirez*, 596 U.S. 366, 371 (2022).  A petitioner may procedurally default a claim by failing to raise it in State court and pursue it through the State's appellate review procedures. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  If State law no longer allows the petitioner to raise or appeal the claim at the time of the habeas petition, the claim is procedurally defaulted.  *Id.*; *see also Shinn*, 596 U.S. at 371.

Procedural default may be excused where a petitioner can show that an external factor prevented him from complying with the procedural rule at issue, through no fault of his own, and that the alleged constitutional violation resulted in actual prejudice.  *Coleman v. Thompson*, 501 U.S. 722, 753 (1991).  And if "the last state court rendering a judgment in the case" reached the merits notwithstanding a petitioner's failure to raise and present an issue according to the State's rules, procedural default does not apply.  *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Victor v. Neb*, 511 U.S. 1, 19 (1994).

The Magistrate Judge determined that Petitioner procedurally defaulted six of his grounds for relief—ground one (challenging the self-defense jury instruction as vague), ground three (regarding the burden of proof for self-defense), ground seven (jury misconduct), and grounds two, five, and twelve (relating to the State trial court's response to the jury's question).  (ECF No. 18, PageID #2946.)  Petitioner objects to this recommendation on grounds two, five, and twelve.  (ECF No. 20, PageID #3018.) On these grounds, the Magistrate Judge determined that petitioner failed to follow

the Ohio Rules of Appellate Procedure.  (ECF No. 18, PageID #2954; *see Maupin v. Smith*, 782 F.2d 135, 138 (6th Cir. 1986).)  He also objects to the Magistrate Judge's recommendation that ground six (instruction on a lesser included offense) be denied as non-cognizable in federal habeas corpus proceedings.  (*Id.*, PageID #2984; ECF No. 20, PageID #3017.)

### II.A.  Jury Question

Rule 16 of the Ohio Rules of Appellate Procedure requires an appellant to include in his brief an "argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies."  Ohio R. App. P. 16(A)(7).  Rule 12 empowers appellate courts to "disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App. R. 16(A)."  Ohio R. App. P. 12(A)(2); *see also Campbell v. Bunting*, No. 1:14-cv-1187, 2015 WL 4984871, at *1 (N.D. Ohio Aug. 19, 2015) ("Ohio App. R. 12(A)(2) . . . empowers the court to disregard any assignment of error the appellant fails to brief in conformity with Rule 16(A)").

On direct appeal, Mr. Thomas raised three assignments of error.  However, the State appellate court found that he failed properly to support his arguments.  On that basis, it overruled the assignments of error.  (ECF No. 18, PageID #2958; *Thomas I*, 2015 WL 4464893, at *9–10.)  Petitioner objects that he sufficiently briefed the issue on direct appeal such that "there is no procedural default."  (ECF No. 20, PageID

14

#3018.) But the State appellate court found otherwise. On a petition for a writ of habeas corpus, the Court's review is limited to whether the State courts determined that a petitioner failed to follow the procedural rules, not correctness of that determination. *Maupin v. Smith*, 782 F.2d 135, 138–39 (6th Cir. 1986). Moreover, examination of Petitioner's briefing on direct appeal confirms the ruling of the State appellate court. His brief contains two short paragraphs supporting these grounds for review and failed to provide support or develop an argument. (*See* ECF No. 9-1, PageID #263.) For these reasons, the Court determines that Petitioner failed to preserve these claims for federal habeas review and, therefore, **OVERRULES** Petitioner's objections.

### II.B.   Lesser Included Offense

Also, Petitioner asserts that the State trial court erred in refusing to instruct the jury on the lesser charges of "Voluntary Manslaughter and Reckless Homicide and violated the Sixth and Fourteenth Amendments of the federal Constitution." (ECF No. 1, PageID #30.) In his report and recommendation, the Magistrate Judge recommends that the Court dismiss this ground because it is not cognizable on federal habeas corpus review. (ECF No. 18, PageID #2988.) In *Beck v. Alabama*, 447 U.S. 625, 638 (1980), the Supreme Court held that in capital cases, a court must instruct the jury as to a lesser included non-capital offense. However, the Supreme Court declined to decide whether this requirement extends to non-capital cases. *Id.* at 635 n.7. Nor has the Sixth Circuit required an instruction on a lesser included offense in non-capital cases: "[W]e are not required to extend *Beck* to noncapital cases." *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990) (en banc) (explaining that *Beck* arises

from Eighth Amendment concerns, not the Fourteenth Amendment's Due Process Clause).  (*See* ECF No. 9, PageID #107 (collecting cases).)  Finding that clearly established Supreme Court precedent does not support Petitioner's claim, the Magistrate Judge recommends denying relief on this ground as not cognizable under habeas corpus review.  (ECF No. 18, PageID #2986.)

Petitioner objects, arguing that the State trial court's refusal to instruct the jury on the accused's theory of the case violated his due process rights.  (ECF No. 20, PageID #3017.)  In support, Petitioner relies on cases from the Second Circuit.  *See Harris v. Alexander*, 548 F.3d 200 (2d Cir. 2008)**;** *Jackson v. Edwards*, 404 F.3d 612 (2d Cir. 2005); *Davis v. Struck*, 270 F.3d 111 (2d Cir. 2001); *see also Barker v. Yukins*, 199 F.3d 867 (6th Cir. 1999).  Each of these cases involved the State trial court's failure to instruct a jury on the defendant's theory of defense.  In each, the court found that the failure to instruct violated due process, the appellate court's affirmation of which was objectively unreasonable.  *Harris v. Alexander*, 548 F.3d at 205–06**;** *Jackson*, 404 F.3d at 627–28; *Davis*, 270 F.3d at 132.

Without question, a defendant "is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater."  *Keeble v. United States*, 412 U.S. 205, 208 (1973).  However, a defendant is not entitled to such an instruction if the evidence would not so permit.  The Sixth Circuit has determined that review of a decision whether the evidence supports a jury instruction on a lesser included offense is generally not cognizable on habeas review, even on a due-process theory.  *Bagby*, 894

16

F.2d at 794. That result might differ in the Second Circuit, but the Court sees no exceptional circumstances warranting such a departure here.

In this case, the jury received instructions on aggravated murder and the lesser included offense of murder. (ECF No. 18, PageID #2998.) Having received an instruction on a lesser included offense, this case does not present the type of circumstances warranting examination and second-guessing of the trial record on collateral review. After all, the jury rejected Petitioner's self-defense argument and found Mr. Thomas guilty of murder. For these reasons, the Court **OVERRULES** Petitioner's objection to the Magistrate Judge's recommendation on ground six.

## III. Review Under the AEDPA

The Magistrate Judge addressed Petitioner's remaining grounds for relief on the merits under the AEDPA.

### III.A. Right to Presence (Ground Four and Ground Thirteen)

While deliberating, the jury submitted a question to the State trial court about the self-defense jury instruction, and the court apparently provided a written answer without notifying either party or making a record in open court. (ECF No. 9-1, ¶¶ 12–13, PageID #522; *id.*, PageID #241−42; ECF No. 1, PageID #37.) The jury asked for clarification on the degree of fault of a defendant claiming self-defense:

> Under Self Defense, Part (A) states "he was not at fault in creating the situation that gave rise to the dispute [. . . ]". We are having trouble analyzing the issue of "fault." If he were say "10%" at fault for having agreed to fist fight is he considered at fault as it pertains to the wording in this section?

(ECF No. 9-1, PageID #201.) In response to that question, the trial judge wrote back:

> You must re-review and apply your collective understanding of the meaning of the terms used in the jury instructions.  The court cannot further define the meaning of those terms.

(*Id.*, PageID #202.)  Listed as ground four and ground thirteen in his petition, Petitioner argues that this response to the jury's question violated his right to be present at all critical stages of trial under the Sixth and Fourteenth Amendments. (ECF No. 1, PageID #28 & #37.)

In his report and recommendation, the Magistrate Judge recommends that the Court deny grounds four and thirteen.  (ECF No. 18, PageID #2968.)  On direct appeal, the State appellate court, with one judge dissenting, found that the record lacked sufficient evidence to determine whether Mr. Thomas was absent from proceedings relating to the jury's question and declined to review the issue.  (ECF No. 9-1, ¶ 47, PageID #297−98; *Thomas I*, 2015-Ohio-310, ¶ 47; *see also* ECF No. 9-1, ¶ 75, PageID #307−08.)  On appeal after remand, the State appellate court assumed that the question from the jury presumed a critical stage of the proceedings requiring Mr. Thomas's presence but determined that there was not prejudice from his absence. (ECF No. 9-1, ¶¶ 12–13, PageID #522–23; *Thomas II*, 2016-Ohio-5607, ¶ 13.)  Viewing Mr. Thomas's absence as more fundamental and structural, the dissenting judge disagreed.  (ECF No. 9-1, PageID #532; *Thomas II*, 2016-Ohio-5607, ¶¶ 32–33.)

Clearly established Supreme Court precedent supports the right of an accused to be present at all critical stages of a trial.  *Illinois v. Allen*, 397 U.S. 337, 338 (1970) (citing *Lewis v. United States*, 146 U.S. 370, 372 (1892)); *see also United States v. Gagnon*, 470 U.S. 522, 526 (1985) (cleaned up).  This right derives from the Sixth

Amendment's Confrontation Clause; but where, as here, the issue does not involve confronting the evidence against a person, the right sounds in due process. *Gagnon*, 470 U.S. at 526 (citing *Allen*, 397 U.S. at 338).  "A leading principle that pervades the entire law of criminal procedure is that, after indictment found, nothing shall be done in the absence of the prisoner." *Crowe v. United States*, 200 F.2d 526, 528 (6th Cir. 1952) (quoting *Lewis*, 146 U.S. at 372.)  "The right to personal presence at all critical stages of the trial and the right to counsel are fundamental rights of each criminal defendant." *Rushen v. Spain*, 464 U.S. 114, 117 (1983).

### III.A.1. Critical Stage of the Proceedings

A "critical" stage of the proceedings is one that holds "significant consequences for the accused."  *Bell v. Cone*, 535 U.S. 685, 695–96 (2002); *Van v. Jones*, 475 F.3d 292, 313 (6th Cir. 2007).  A question from the jury that goes to the defendant's core theory of the case presents a critical stage of the proceedings.  Indeed, the State appellate court treated it as such.  (ECF No. 9-1, ¶¶ 12–13, PageID #522–23; *Thomas II*, 2016-Ohio-5607, ¶ 13.)  Although Respondent contends that a jury's question does not present a critical stage of the proceedings (ECF No. 9, PageID #101), its cases do not speak to the facts and circumstances of this case.  For example, in *Martin v. Moore*, No. 2:12-cv-878, 2013 U.S. Dist. LEXIS 176073, at *32 (S.D. Ohio Dec. 16, 2013), the trial judge answered two questions from the jury in the presence of counsel, who waived the defendant's presence.  And in *Simmons v. Sheets*, No. 2:09-cv-1077, 2011 U.S. Dist. LEXIS 27502, at *83–84 (S.D. Ohio Feb. 23, 2011), the jury's question took only one minute to resolve, making it factually unlikely to have implicated a fundamental right of the defendant.

Further, Respondent argues that the Supreme Court's failure specifically to hold that a defendant's absence, without a waiver, from a proceeding during deliberations when the State trial court responds to a jury's question forecloses relief. (ECF No. 9, PageID #101.)  This position does not hold up.  Even under the AEDPA's source-of-law provision, federal courts may look for guidance to the decisions of other courts applying the principles that the Supreme Court has determined.  *See, e.g.*, *French v. Jones*, 332 F.3d 430, 436 (6th Cir. 2003).  Moreover, Respondent draws a fine line between responding to a question and giving a supplemental instruction, a distinction which finds no support in the Supreme Court's jurisprudence.  Because of the nature of the jury's question, this is not a case where a defendant's "presence would be useless, or the benefit but a shadow."  *Snyder v. Massachusetts*, 291 U.S. 97, 106–07 (1934), *overruled on other grounds by Malloy v. Hogan*, 378 U.S. 1 (1964).  In any event, the State appellate court here treated the jury's question as constituting a critical stage of the proceeding.  As a mixed question of law and fact, *see id*. at 435, the Court gives deference to that finding.  Because the jury's question went to the heart of Mr. Thomas's claim at trial of self-defense, that finding is not clearly erroneous.

### III.A.2. Harmless Error and Structural Error

As a general rule, constitutional error does not demand automatic reversal. *Arizona v. Fulminante*, 499 U.S. 279, 306 (1991).  Ordinarily, a petitioner must also show that the error was not harmless.  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  On habeas review, an error may be considered harmless unless it had "substantial and injurious effect or influence in determining the jury's verdict."  *Id.*

(quoting *Kotteakos* v. *United States*, 328 U.S. 750, 776 (1946)).  However, that principle has limits.  Structural errors "by their very nature cast so much doubt on the fairness of the trial process that, as a matter of law, they can never be considered harmless." *Satterwhite v. Texas*, 486 U.S. 249, 256 (1988).  In other words, a court should not apply harmless error review to claims of structural error.  Indeed, "constitutional error" occurs, without the need to show prejudice, "when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." *United States v. Cronic*, 466 U.S. 648, 659 n.25 (1984) (collecting cases).

In this case, the absence of Mr. Thomas when the State trial court answered the jury's question about self-defense constitutes an error.  The question comes down to whether that error is structural—an issue on which the State appellate court divided.  The majority applied harmless error review and found that Mr. Thomas "cannot demonstrate prejudice. . . . His claim of prejudice stems strictly from his inability to challenge the court's allegedly vague answer through an objection." (ECF No. 9-1, PageID #522; *Thomas II*, 2016-Ohio-5607, ¶ 13.)  A dissenting judge saw the error as structural:  "Whether his presence, and his input on the appropriate answer, would have made a difference in the trial court's answer is a different issue than the one Thomas raised." (ECF No. 9-1, PageID #532; *Thomas II*, 2016-Ohio-5607, ¶ 32.)

Under the AEDPA, the question is whether the State courts' adjudication of this issue meets the standard in Section 2254(d) for relief.  *Brown v. Davenport*, 596 U.S. 118, 122 (2022).  For its conclusion that Petitioner could not show prejudice, the

21

State appellate court majority relied on *State v. Davidson*, 2011-Ohio-1528, ¶ 7 (Ohio Ct. App.), which in turn traces through *State v. Hale*, 119 Ohio St. 3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 100, back to the Supreme Court's decision in *Snyder*.  In *Snyder*, the Supreme Court assumed that "in a prosecution for a felony the defendant has the privilege under the Fourteenth Amendment to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge."  291 U.S. at 105–06.  However, "the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only."  *Hale*, 2008-Ohio-3426, ¶ 100 (quoting *Snyder*, 291 U.S. at 107–08).  This determination must be made on the record as a whole.  *See Gagnon*, 470 U.S. at 526–27 (citing *Snyder*, 291 U.S. at 115).

With this background, the question in this case is exceedingly close—even under the AEDPA's deferential standard.  On the one hand, structural error involving the absence of counsel at a critical stage of the proceedings does not admit harmless error analysis.  *Chronic*, 466 U.S. at 659 n.25; *Holloway v. Arkansas*, 435 U.S. 475, 489 (1978); *French*, 332 F.3d at 438.  In this regard, the State appellate court's dissent appears to have the better of the argument.

On habeas review, however, the question is not whether the Court would make the same decision as the State courts in the first instance, but whether the State courts' adjudication meets the standard under Section 2254(d).  Under Section 2254(d)(1), an *unreasonable* application of federal law is not the same as an *incorrect*

22

application of it.  *See Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Williams*, 529 U.S. at 410).  On the record as a whole, the State courts' decision that the State trial judge's written response to the jury, made outside the presence of Mr. Thomas, his counsel, or the prosecutor, did not violate his constitutional rights is not unreasonable.  At bottom, the State courts might have erred in determining whether some form of harmless error analysis applied and its proper formulation.  But the Court cannot say that the State courts' adjudication was contrary to or an unreasonable application of clearly established federal constitutional law as determined by the Supreme Court.  Therefore, the Court **OVERRULES** Petitioner's objection.

### III.B.  Sufficiency of the Evidence (Ground Ten)

As his tenth ground for relief, Petitioner argued that the evidence is insufficient to maintain a murder conviction.  (ECF No. 1, PageID #34.)  The Magistrate Judge recommended that the Court deny this ground because Petitioner did not show that the State courts unreasonably applied *Jackson v. Virginia*, 443 U.S. 307 (1979), or unreasonably determined the facts.  (ECF No. 18, PageID #2969.) Petitioner objects by rearguing his case on the issue.  However, objections must be specific, and a petitioner may not generally object to the Magistrate Judge's recommendations.

On this issue, the only objection that Defendant makes with any specificity is that the Magistrate Judge failed to analyze the cased cited.  (ECF No. 20, PageID #3006.)  As the Magistrate Judge noted, however, the Court must defer to the jury's determinations when resolving conflicts in testimony, weighing the evidence, and

drawing reasonable inferences from that evidence; a reviewing court is not permitted to substitute its own opinion for that of the jury. *Jackson*, 443 U.S. at 318–19 & n.13. Additionally, on habeas review, a federal court must defer to a State appellate court's "consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)). Even if the Magistrate Judge failed to consider Petitioner's cases to his satisfaction, the record shows that the double deference due on a challenge to the sufficiency of the evidence on collateral review leaves no doubt that Mr. Thomas's conviction meets the standard for relief under Section 2254(d). Therefore, the Court **OVERRULES** Petitioner's objections on ground ten.

### III.C. Ineffective Assistance of Counsel

The Sixth and Fourteenth Amendments to the Constitution afford criminal defendants the right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003). To succeed on a claim of ineffective assistance of counsel, a petitioner must show that (1) the performance of counsel fell below an objective standard of reasonableness, such that counsel was not functioning as the counsel guaranteed by the Sixth Amendment, and (2) the ineffectiveness of the counsel prejudiced the petitioner's defense. *Strickland*, 466 U.S. at 687–88. Counsel enjoy the presumption that they discharge their duties in a sufficiently effective manner and exercise reasonable professional judgment based on the circumstances at the time. *Id.* at 690.

To thwart a petitioner's temptation "to second-guess counsel's assistance after conviction or adverse sentence, and [because] it is all too easy for a court, examining

24

counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable," a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  In other words, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (cleaned up).  To establish prejudice, a petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

In his petition, Mr. Thomas asserted that trial counsel was ineffective because (1) he failed to discuss self-defense during his opening statement (ground eleven); (2) he failed to investigate and present available evidence of Mr. Thomas's state of mind (ground fourteen); and (3) he failed to properly utilize a mental health expert at trial (ground fifteen).  (ECF No. 1, PageID #34–35 & #39–48.)

### III.C.1. Ground Eleven

Applying *Strickland*, the Magistrate Judge recommended that the Court deny Petitioner relief on ground eleven.  At trial, Mr. Thomas's counsel focused in his opening statement on intent—not self-defense.  (ECF No. 18, PageID #2975–76.)  On appeal, the State appellate court reasoned that this opening statement resulted from the strategy of directing the defense's case in response to how the prosecution's case unfolded and to secure an acquittal on the aggravated murder charge.  (ECF No. 9-1, PageID #282; *Thomas I*, 2015-Ohio-2935, ¶ 13.)  The Magistrate Judge reached the same conclusion.  (ECF No. 18, PageID #2976.)  Therefore, he determined that the

record does not contain evidence sufficient to overcome the presumption that counsel's choice not to mention self-defense in the opening statement was trial strategy. (*Id.*)

Petitioner objects that "[t]he law required that the jury understand [his] weaknesses . . . so it could properly apply the law of self-defense" and that the Magistrate Judge "practically ignored all of the case law and facts cited by Thomas." (ECF No. 20, PageID #3007.)  Because of trial counsel's alleged failure, Petitioner contends that "[t]he jury was deprived of this information which is relevant to his conduct and state of mind and how he perceived the threat from the victim." (*Id.*, PageID #3010.)

But the cases on which Petitioner relies do not help him meet the *Strickland* standard.  For example, Petitioner cites *State v. Moses*, 2014-Ohio-1748, ¶ 40 (Ohio Ct. App.), which recites the elements for establishing self-defense and the burden of proof.  And in *State v. Jackson*, 22 Ohio St. 3d 281, 284, 490 N.E.2d 893 (1986), the Ohio Supreme Court analyzed jury instructions on the issue.  But the record provides no reason to think that trial counsel was unaware of Ohio law on self-defense.  Only *State v. Bradley*, 42 Ohio St. 3d 136, 538 N.E.2d 373 (1989), speaks to opening statements.  In dissent, one justice saw no trial strategy in completely waiving opening statement, in his view making that decision ineffective on the facts presented.  *Id.* at 156 (Wright, J., dissenting).

Petitioner's argument focuses on self-defense as the key to the case.  (*See* ECF No. 20, PageID #3007.)  But the Court is not tasked with determining whether

26

another strategy might have proved more effective.  Indeed, under *Strickland*, the inquiry avoids such second-guessing in hindsight.  Counsel had a clear strategy during opening statement.  Therefore, the Court **OVERRULES** Petitioner's objections to ground eleven.

### III.C.2. Ground Fourteen and Ground Fifteen

Petitioner claims that his trial counsel rendered constitutionally deficient performance when he failed to present evidence of his "very low intelligence" that would allow a jury to step into his shoes in the claim of self-defense and when his counsel failed to hire a mental health expert to testify regarding the available health records.  (ECF No. 1, PageID #39–48.) In his Report and Recommendation, the Magistrate Judge found no error sufficient to warrant relief and recommended that the Court deny both grounds fourteen and fifteen.  (ECF No. 18, PageID #2984.)

Petitioner's objections are limited.  He maintains that the Magistrate Judge "made the same error" as the State courts when he "failed to properly analyze or discuss the impact of [Mr. Thomas's] state of mind in this self defense case."  (*Id.*, PageID #3012.)  Whatever the importance of Mr. Thomas's state of mind, the evidence in the record fails to overcome the presumption that counsel strategically omitted Mr. Thomas's mental health records and evidence.  (ECF No. 18, PageID #2977–78.) The record developed on post-conviction relief shows that trial counsel was aware of this evidence, but did not want to introduce it because it might negatively affect the jury's view of Mr. Thomas. (ECF No. 9, PageID #137–39.)  Petitioner has not demonstrated that his counsel performed deficiently or that, but for his trial counsel's performance, the jury would have accepted his claim of self-defense and found him

not guilty of murder.  Accordingly, the Court **OVERRULES** Petitioner's objections on grounds fourteen and fifteen.

### CERTIFICATE OF APPEALABILITY

Without a certificate of appealability, a habeas petitioner cannot appeal a final order in a habeas proceeding.  28 U.S.C. § 2253(c)(1).  Issuance of a certificate of appealability requires a petitioner to make "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This means that the petitioner must show that reasonable jurists would find the district court's determination of the relevant constitutional claims debatable or incorrect.  *Tennard v. Dretke*, 542 U.S. 274, 282 (2004).  The petitioner need not show that the appeal would succeed to be eligible for a certificate of appealability.  *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Based on this standard, the Court issues a certificate of appealability on ground four and ground thirteen (relating to Mr. Thomas's right to be present for the State trial court's response to the jury's question).  Reasonable jurists could fairly debate whether the absence of Mr. Thomas and his trial counsel at that critical stage of the proceedings amounts to structural error.  Indeed, the State appellate court disagreed on that question.  Therefore, the Court issues a certificate of appealability.

### CONCLUSION

For the foregoing reasons, the Court the Court **OVERRULES** Mr. Thomas' objections (ECF No. 20), **ADOPTS** the Magistrate Judge's report and

recommendation (ECF No. 18), **DISMISSES** the petition, and issues a certificate of appealability on ground four and ground thirteen.

      **SO ORDERED.**

Dated:  March 31, 2025

                                       _____
                                          J. Philip Calabrese
                                          United States District Judge
                                          Northern District of Ohio